LEWIS and Others *against* CARSTAIRS.

IN ERROR.

6 Wh 193
e212    1  37
6 Wh 193
31 SC ³502

1. E. S. B., who was the owner of a lot of ground on the west side of 8th street, in the city of Philadelphia, and also the owner of a lot on the south side of Chesnut street, the rear of which lot bounded the first lot on the west, conveyed the lot on 8th street to J. S., " bounded on the west by other ground of E. S. B. (viz. the Chesnut street lot,) and on the south by an alley of the width of 2 feet 6 inches, intended to be left open by the said E. S. B.; together with the free use and privilege of the said alley as a passage, in common with the said E. S. B. and his heirs, and those to whom he may likewise grant the same privilege;" together with the privilege of building on the said alley, &c. Four months after the date of this deed, E. S. B. made an agreement with T. C., who was the owner of a lot adjoining the 8th street lot on the south, by which, after reciting that E. S. B. had agreed to open an alley 2 feet 6 inches wide, running west 82 feet 6 inches, &c. the privilege of which, in common with the said E. S. B., his heirs and assigns, was intended to be granted to J. S., it was agreed that T. C. should leave out forever on the south of the alley a strip of ground one foot in front on 8th street, by 82 feet 6 inches in depth westward, so as to widen the alley to 3 feet 6 inches, for the common use and benefit of the said parties, their heirs and assigns, &c. After-wards E. S. B. conveyed the lots on Chesnut street to G. M., together with the free and common use and privilege of the said 3 and a half feet wide alley, and of a water course over and along the same, and the right of soil of the northernmost part of the alley, subject to the privileges granted by the agreement to the said T. C. and J. S., their heirs and assigns, &c. G. M. was at the time of this conveyance the owner of other lots of ground on Chesnut street adjoining the lots so conveyed to him by E. S. B. on the west; and opened an alley in the rear of them communicating with the said alley leading into Eighth street: *Held*, that the right of way, &c. in the said alley in com-mon with J. S. and T. C., and their heirs, &c., was confined to the owners and occupiers of the lots on Chesnut street, originally owned by E. S. B., and adjacent to the alley, and could not be extended by G. M. to the owners and occupiers of his lots adjoining on the west.

2. Where there is evidence of an uninterrupted use of an alley for a passage and water-course, for a period less than 20 years, evidence of contribution by the persons so using it, to the expenses of laying and repairing the pavement, and of laying water-pipes under the surface, is proper to be submitted to the jury, as bearing upon the fact of the presumption of a grant.

3. A party who might otherwise be entitled to the exclusive enjoyment of an easement may be equitably estopped from contesting the right of others to use it, if by allowing a common enjoyment of it for a period less than 20 years, and by positive acts of acquiescence on his part he encourages an innocent purchaser to pay his money for the purchase of property to which such easement appears to be appurtenant.

ERROR to the District Court for the City and County of Philadel-    5 W S. 209
phia, to remove the record of an action of trespass *quare clausum*
    VOL. VI.—25

(Lewis *v.* Carstairs.)

*fregit,* &c., brought by James Carstairs against Lawrence Lewis and William P. Blight, executors of the will of George Blight, deceased, Sarah Care, Hannah Care, Martha Care, William Wharton, and P. E. Fontanges.

The action was brought to try the right of the defendants to use as a water-course, passage or otherwise, a certain alley laid down in the following diagram.

The controversy arose out of the following circumstances:

(Lewis v. Carstairs.)

On the 10th of January, 1809, Edward Shippen Burd, being seised in fee of a lot of ground on the west side of 8th street, at the distance of 100 feet south from the south side of Chesnut street, containing in front 22 feet, and in depth 99 feet; and also of a lot on the south side of Chesnut street, at the distance of 66 feet west of 8th street, containing in front 33 feet, and in depth 100 feet, executed a conveyance to John Sims in fee, for a lot described as follows:

" All that lot or piece of ground situate on the west of Delaware Eighth street, between Walnut and Chesnut streets, in the said city, and composed of two contiguous lots, that is to say, one thereof commencing at the distance of ninety feet one inch and a half southward from the said Chesnut street, situate on the west side of the said Eighth street, and containing in front or breadth, on the said Eighth street, nine feet ten inches and half an inch, and extending in length or depth east and west, thirty-three feet: bounded on the north by other ground of the said Edward Shippen Burd, on the east by the said Eighth street, on the south by another lot contiguous thereto, and hereafter described and granted, and on the west by ground of the said John Sims. Also, the other contiguous lot above mentioned, situate on the west side of the said Eighth street, and commencing at the distance of one hundred feet southward from Chesnut street, and containing in front or breadth on the said Eighth street, north and south, nineteen feet six inches, and extending in in length or depth east and west, sixty-six feet: bounded on the north partly by ground of Edward Bonsall, partly by ground of the said John Sims, and partly by the other lot contiguous thereto, and hereby granted, on the east by Eighth street aforesaid, on the west by other ground of the said Edward Shippen Burd, and on the south by an alley of the width of two feet six inches, intended to be left open by the said Edward Shippen Burd : together with the free use and privilege of the said alley, as a passage in common with the said Edward Shippen Burd and his heirs, and those to whom he may likewise grant the same privilege; together with the privilege of building over the said alley, leaving at least nine feet headway in the clear; together with the appurtenances," &c.; reserving an annual ground-rent in fee of one hundred and forty dollars, with the usual covenants and clauses; and at the conclusion of the deed the grantee, Sims, covenanted that the buildings to be erected upon the lot should be in such a manner as to leave the alley of the full width of 2 feet 6 inches in the clear.

This deed was recorded on the 17th of March, 1809.

On the 20th of May, 1809, an agreement was entered into between E. S. Burd and Thomas Carstairs, who was the owner of the lot of ground on Eighth street adjoining that of Mr. Burd on the south, reciting that, " Whereas, and inasmuch, as the said Edward Ship-

pen Burd hath agreed to open and lay out an alley, of the width of two feet six inches, running from Delaware Eighth street, in the said city, westward to the depth of eighty-two feet six inches, from the west side of the said Eighth street, and commencing at the distance of one hundred and nineteen feet six inches, from the south side of Chesnut street, and running parallel with the said Chesnut street, to the depth aforesaid; situate between the said Chesnut street and George street—the privilege whereof in common with the said Edward Shippen Burd, his heirs and assigns, either has been or is intended to be granted to John Sims, of the said city, painter, together with the privilege of building over the said alley, to the depth of forty-two feet from the west side of Eighth street aforesaid. Now it is hereby agreed by and between the said parties, that in consideration of the said Edward Shippen Burd's permitting the said Thomas Carstairs to use the said alley as a passage and water-course, in common with the said E. S. Burd and John Sims, and the heirs and assigns of the said E. S. Burd, he the said Thomas Carstairs and his heirs will, and he doth hereby in consideration of the premises, and of one dollar to him in hand paid by the said E. S. Burd, grant, covenant, agree to and with him, his heirs and assigns, by these presents, that he, the said Thomas, will open and leave out forever, adjoining the said alley, on the south, a strip of ground one foot in front on the said Eighth street, and extending eighty-two feet six inches in depth, westward, in the clear; so as to widen the said alley from two feet six inches, to three feet six inches, in the clear, of the depth aforesaid; for the common use and benefit of the said parties, to these presents, their heirs and assigns forever. And the said Thomas Carstairs in consideration aforesaid, doth hereby grant unto the said E. S. Burd, his heirs and assigns, the right and privilege of building over and under the said one foot of ground, fronting upon Eighth street, as aforesaid, to the depth of forty-two feet, westward from Eighth street, to the end that the said E. S. Burd may grant the same privilege of building over and under the same one foot of ground to the said John Sims in fee."

On the 7th of December, 1815, E. S. Burd, by indenture of that date, conveyed to George Murray, two messuages and lots described as follows:

" Two certain contiguous three-story brick messuages or tenements and lot or piece of ground thereunto belonging, situate on the south side of Chesnut street, between Eighth and Ninth streets from Delaware, in the city of Philadelphia, containing in breadth east and west on the said Chesnut street, thirty-three feet, and extending in depth southward on the east side thereof, one hundred and nineteen feet six inches, to a three feet and a half wide alley, leading into said Eighth street; thence extending along the said alley westward parallel with the said Chesnut street, sixteen feet six inches;

thence extending southward parallel with the said Eighth street, two feet six inches along the western boundary 'of the said nothernmost. part of the said alley; thence westward parallel with the said Chesnut street, sixteen feet, six inches; thence northward one hundred and twenty-two feet to Chesnut street; thence eastward along the south side of Chesnut, thirty-three feet to the place of beginning: bounded westward by other ground, now of the said George Murray, northward by the said Chesnut street, eastward partly by a messuage and lot of ground now or late of Edward Bonsall, partly by ground now or late of John Sims, and partly by part of the end of the said three feet and a half wide alley, and southward partly by the said alley, and partly by ground of Thomas Carstairs."

The deed then recited the conveyance of this lot to E. S. Burd, and proceeded:

"And the said Edward Shippen Burd left open the southeastern-most part of the aforesaid lot fronting on Eighth street, of the breadth of two feet six inches on the said Eighth street, by eighty-two feet six inches in depth, for an alley; and in and by a certain instrument of writing bearing date the twentieth day of May, one thousand eight hundred and nine, recorded in deed book J. C. No. 3, p. 216, &c., did agree to permit the said Thomas Carstairs to use the said alley as a passage way and water-course; and the said Thomas Carstairs did therein covenant and grant to and with the said Edward Shippen Burd, his heirs and assigns, to leave open forever adjoining the said alley on the south side thereof, a strip of ground one foot in front on the said Eighth street, and extending eighty-two feet six inches in depth westward, in the clear, so as to widen the said alley to three feet six inches in the clear, for the benefit of the said Edward Shippen Burd and Thomas Carstairs, their heirs and assigns forever; and also granting to the said Edward Shippen Burd his heirs and assigns, the right and privilege of building over and under the said one foot of ground fronting upon Eighth street, aforesaid, to the depth of forty-two feet; which right and privilege of building over and under the said one foot of ground to the depth of forty-two feet from Eighth street as aforesaid, leaving at least nine feet headway in the clear, together with the privilege of building over and under the northernmost part of the said alley, that is to say two feet six inches in breadth, to the depth of forty-two feet from Eighth street aforesaid, leaving at least nine feet headway in the clear, together with the common use and privilege of the said three feet and a half wide alley leading into said Eighth street as a passage way and water-course, the said Edward Shippen Burd hath granted with the remainder of the said Eighth street lot adjoining the said alley to the northward unto John Sims, his heirs and assigns,—Together with the free and common use and privilege of the said three feet and a half wide alley, and of a water course over and along the

same, and the right of soil of the northernmost part of the said alley, left open by the said Edward Shippen Burd as aforesaid; subject, however, to the privileges granted therein to the said Thomas Carstairs and John Sims, their heirs and assigns respectively; and together with the ways, waters, water-courses, and appurtenances whatsoever thereunto belonging or in any wise appertaining," &c.

At the date of this conveyance to him, George Murray was seized of three messuages and lots of ground, situate on the south side of Chesnut street, adjoining to the west the lots conveyed to him by Burd, and containing together in front on Chesnut street, 60 feet, and in depth 148 feet, to a 20 feet court, communicating with an alley leading into George street, and having a right of way through the court and alley into George street.

At, or shortly after, the date of the conveyance to him from Burd, Murray was also seized of three messuages and lots of ground, situate on the north side of George street, immediately south of the three messuages and lots on Chesnut street, and communicating with the twenty feet wide court.

On the 26th of September, 1817, George Murray conveyed to Nicholas Biddle in fee the three messuages and lots on Chesnut street, by the following description:—

"Beginning at a point in the south line of Chesnut street, at the distance of ninety-nine feet west, from the west side of Delaware Eighth street, thence south by other ground of George Murray, intended to be conveyed this day to Nicholas Biddle, 118 feet 6 inches, to an alley 3 feet 6 inches wide leading east into Eighth street, thence west along the north side of said alley 5 feet 9 inches to a point, thence south along said alley, 5 feet 3 inches to a point, where said alley is only three feet wide in the clear, thence west along said alley 37 feet 9 inches to a point, thence south along the west end of said alley parallel with Eighth street, 3 feet to the line of other ground of said George Murray, thence west by the same, 16 feet 6 inches to the line of ground now or late of John Brown, thence north by the same 126 feet 9 inches to Chesnut street, thence along Chesnut street 60 feet to the place of beginning. Together with the common use and privilege of the said alley and of a water-course over and along the same at all times hereafter, forever."

On the 22d of July, 1821, Nicholas Biddle conveyed to James Craig in fee the easternmost of the three messuages and lots so conveyed to him by Murray, containing in front on Chesnut street 20 feet, and extending back to the said alley leading eastward into Eighth street, which alley bounds it on the south. "Together with the common use and privilege of the said alley and of a water-course therein at all times hereafter forever."

On the 25th of November, 1822, Nicholas Biddle conveyed to Nathan Shoemaker the messuage and lot next to the west, containing 20 feet in front on Chesnut street, by 123 feet deep to an alley where the same is 3 feet wide : bounded south by the said alley : " Together with the common use and privilege of said alley leading into Eighth street, and of a water-course therein at all times forever."

On the 12th of January, 1833, Nicholas Biddle conveyed to Sarah Care the westernmost of the three messuages and lots, of the same dimensions both as to breadth and depth, and with the same use and privilege of the alley leading into Eighth street as a way and water-course.

On the 26th of November, 1822, J. G. Tryon, sheriff of the city and county of Philadelphia, conveyed to George Blight in fee two contiguous three-story brick messuages and lots on the north side of George st. between Eighth and Ninth, beginning in George street, at 119 feet from Eighth, thence northward 30 feet, thence eastward 10 feet, thence north 38 feet, thence west 50 feet, thence south 68 feet to George street, thence by George street east 40 feet to the place of beginning, which had been taken in execution and sold as the property of George Murray.

On the 28th of December, 1822, Sheriff Tryon conveyed to George Blight in fee a three-story brick messuage and lot on the north side of George street, between Eighth and Ninth, containing in front on George street 20 feet, and in length or depth 108 feet, reciting that it was the easternmost of three messuages and lots containing together in front 60 feet and in length or depth 108 feet; the other two of the said messuages and lots having been conveyed to the said George Blight by the said Jacob G. Tryon, sheriff, by deed poll dated November 22d, 1822; and also another messuage and lot adjoining the above, containing in breadth on George street 19 feet 9 inches, and in length 46 feet.   " Together with the privilege of the said three feet six inches wide alley, and two feet six inches wide alley, and all other the ways, rights, &c. in the same full, free and ample manner, &c. as the said George Murray had and held the same."

In the year 1835, a controversy having arisen between the then owners of the houses and lots on Chesnut-street and George-street on the one part, and the owners of the houses and lots on Eighth street on the other part, respecting the right to use the alley leading into Eighth street, the following agreement was entered into.

" Whereas a dispute has arisen between James Carstairs and the heirs and legal representatives of John Sims, on the one side, and the several owners of property adjoining an alley on the west side of

Eighth street, between George and Chesnut streets, as to the right of said owners of property so situated, to make use of said alley as a water-course, passage or otherwise; and whereas the said Carstairs and heirs and representatives of Sims, have, in order to prevent any bar to the rights which they claim, obstructed said alley and water-course, and are about to cut off the pipe which conducts the Schuylkill water along said alley to some of the property aforesaid. And whereas the said disputants are willing to conduct the litigation with the least possible inconvenience to each other, and to bring the question to a speedy judicial determination. Now, therefore, it is agreed by the subscribers hereto, that the said Carstairs and heirs and representatives of Sims, shall immediately remove all obstructions to said alley and water-course, and permit said conduit pipe to remain as it now is; and it is further agreed, that the lapse of time shall be considered to have ceased from the fourteenth day of February, 1835, the time when the said obstructions were first erected, and the rights of the parties shall in all judicial proceedings in regard to said alley, be considered and regarded as they then were, and that the said Carstairs, and heirs and representatives of Sims, shall be entitled to every advantage which those obstructions so made, and as regards said water-pipe intended to be made, and which is hereby considered to be made, would give them if continued down to the time of final adjudication; and it is further agreed that an action of trespass shall be brought, wherein James Carstairs shall be plaintiff, and the said claimants of a right of way, &c., who may be subscribers, defendants, in which action issue shall be taken on the right of all or any of the said defendants to use said alley, and all the said parties shall abide the determination of said action in regard to their said respective rights."

This action having accordingly been brought, the plaintiff declared in trespass *quare clausum fregit*, &c., and the defendants pleaded that "they were respectively entitled to a right of way and water-course through, over, and along the close in the said declaration mentioned; and in the exercise of the said right of way they did," &c.

Issue was joined upon this right; and the cause came on for trial, before Jones, J., on the 7th of November, 1838, when the defendants gave in evidence the agreement between the parties, under which the suit was brought, and the several deeds under which they claimed.

They then produced Dr. Nathan Shoemaker, who testified as follows:

"I was the owner of one of these pieces of property; I had the uninterrupted use of the alley while I lived in the house, both as a water-course and for other purposes; there was a pipe laid in the alley

(Lewis *v.* Carstairs.)

while I occupied, for the conveyance of Schuylkill water to the premises. James Carstairs called upon me some time in the summer of 1834, and inquired of me if I would be willing to join in the expense of laying a pipe up the alley. The pipe was laid by agreement accordingly as had been agreed upon by the parties, for which I paid my proportion of the expense; I recollect Robert Looney rendering this bill to me; it is dated August 4, 1834. I paid my proportion of it; I paid one-fourth at least; I paid all that was apportioned to me; no opposition was made during the time I lived there, nearly fourteen years, and I enjoyed the uninterrupted use of the alley until within a few months before I left it, when it was boarded up by somebody, and I was subjected to considerable inconvenience as respects water. There was a leaden pipe running up the alley at the time Miss Care purchased: it went up the alley across Swaim's lots; all the houses on Chesnut street were supplied from that pipe at that time; the iron pipe was laid as far as the property of Smith, Carstairs, and Swaim; I attached a leaden pipe to the iron pipe and carried it up to my house; I believe that Miss Care is now supplied from Chesnut street. By Swaim's I mean the two houses immediately east of Fontanges."

Robert Looney, another witness for the defendants, testified as follows:

"In the summer of 1834, I was called on by Mr. James Smith, who represents one of the houses on Eighth street, No. 40, next to Mr. Carstairs; he informed me that a new pipe was wanted up the alley in lieu of the old one; that he had obtained the consent of Dr. Shoemaker and Dr. Swaim; that a majority were agreed that I should put the pipe in. Dr. Swaim, Mr. Carstairs, and Mr. Smith, each paid me his proportion of my bill for the pipe; this is my bill dated Aug. 4, 1834; it was paid; Dr. Shoemaker paid me seventeen dollars and fourteen cents; I think Mr. Carstairs paid me, and very pleasantly too; each paid a proportion of what passed him; all paid in proportion as it passed Mr. Carstairs's ground; the iron pipe according to this bill, extends from the centre of Eighth street, ninety-five and a half west, and there is a piece of strong lead pipe which is used between the public and private iron pipes, which, perhaps, would make it go further a foot or two; there is pipe beyond the ninety-five feet west communicating with the houses on Chesnut street, or some of them; it supplies Dr. Swaim's two houses, and Dr. Shoemaker; I know nothing of the others on Chesnut street; two others on Eighth street are supplied by this pipe, Mr. Carstiars and Mr. Sims. The lead pipe is in the ground west of the iron pipe; I believe it conducted to Dr. Shoemaker; we connected the iron pipe with that lead pipe."

The defendants then offered in evidence Poulson's American Daily

(Lewis *v.* Carstairs.)

Advertiser, of December 4, 1822, containing a notice by the sheriff of the sale of Murray's property; which was objected to by the counsel for the plaintiff, and rejected by the court, who, at the request of the defendant's counsel, noted their objection to its reception.

The defendants then examined Nicholas Biddle, who deposed as follows:

"I was owner of property on Chesnut street, which, in the autumn of 1817, I purchased from George Murray; I resided there three or four years; during my residence the little alley running into Eighth street, was used by all those five houses, as an outlet into Eighth street; the water ran through it; the wood was brought through it; there was no other way; the front on Chesnut street was closed; I refer to 1817, and all the time I occupied it; I contributed to the repairs of the alley; this receipt is in my hand-writing; (receipt by Mr. Sims, January, 4, 1821;) the right of way never was questioned during my ownership or occupancy; the first I knew was Dr. Shoemaker telling me of it. I owned the two houses belonging to Mr. Swaim, Mr. Fontanges, &c.; I occupied Nos. 108 and 110. I have a memorandum, from my book of entries, of charges on house No. 110; "1821, April 19, paid James S. Ewing for laying pipe in Eighth street; J. C. and N. B. paying one half, Messrs. Carstairs and Sims, one-half,—$5,50."

The defendants then read in evidence the receipt of John Sims, as follows:

"Received of N. Biddle, Jan. 4, 1821, four dollars and sixty-eight cents, being his and Mr. James Craig's proportion of the bill of Wm. Louderback for paving the alley in Eighth street.
$4,68.                                         John Sims."

The defendant's counsel then submitted the following points, upon which they requested the charge of the court, viz.:

1. That under the deeds given in evidence, the defendants, or some of them, had a right of way in the alley in question.

2. That if the right did not pass by the deed, yet from the evidence in the case, the jury might presume a grant of a right of way to the defendants or some of them.

3. That the plaintiffs were equitably estopped from contesting the defendant's right of way, by the facts proved respecting the water pipes, paving of the alley, &c."

The court charged the jury as follows:

"The defendants in this case, have given in evidence several

deeds and writings, for the purpose of showing that they have title by deed to the right of way in question. It is the duty of the court to put a construction upon those deeds and writings, and I give it to you as a matter of law, that the defendants have not title to the right of way in question under them.

The next question is, whether the defendants have acquired a right to this alley by adverse use and occupancy. From a user of the alley for twenty years by the defendants, you may presume a grant of a right of way, but not not from any less period. There is no evidence of any such user. Another question has been raised, viz. whether the evidence in the cause, of the plaintiff's having called upon the other parties to contribute towards the expense of repairing the water pipes, is sufficient to estop him from asserting his right to the alley exclusively of the defendants; my answer is that the plaintiff is not estopped. These points are reserved for the decision of the court in bank; your verdict, therefore, ought to be for the plaintiff. As the object of this suit is to try a right, you will assess nominal damages."

The counsel for the plaintiff here interposed, and objected to so much of the charge as informed the jury that they ought to find for the plaintiff, and desired that the court should leave it to the jury to find their verdict, whereupon the court told the jury " to find their verdict."

After argument upon the reserved points, the District Court gave judgment upon the verdict; whereupon this writ of error was taken.

The following errors were assigned.

" 1. The learned judge, who tried the cause below, erred in refusing to admit in evidence, upon the trial, the sheriff's advertisement of the sale of part of the premises, to which the alley led, of which the right of way was in controversy in the cause.

2. The learned judge, who tried the cause, erred in refusing to charge the jury as requested in writing by the plaintiff's counsel: that the defendants, or some of them, had a right of way in the alley in question, under the deeds given in evidence.

3. The learned judge erred in charging the jury that the defendants had not title to the right of way in question under the deeds and writings given in evidence by them.

4. The learned judge, who tried the cause, erred in refusing to charge the jury as requested in writing by the plaintiff's counsel, that if the right of way did not pass by the deeds, yet that from the evidence in the case, the jury might presume a grant of a right of way to the defendants or some of them.

5. The learned judge, who tried the cause, erred in charging the jury, that from a user of the alley for twenty years by the defendants, the jury might presume a right of way, but not from any less period; and that there was no evidence of any such user.

6. The learned judge, who tried the cause, erred in refusing to charge the jury as requested in writing by the defendant's counsel, that the plaintiffs were equitably estopped from contesting the defendant's right of way, by the facts proved respecting the water pipes, paving of the alley, &c.

7. The learned judge, who tried the cause, erred in charging the jury that the evidence in the cause of the plaintiff's having called upon the other parties to contribute towards the expense of repairing the water pipes was not sufficient to estop him from asserting his right to the alley, exclusively of the defendants.

8. The learned judge, who tried the cause, erred in charging the jury that their verdict ought to be for the plaintiff below, and afterwards in directing them to find their verdict; leaving it to be inferred that they must find for the plaintiff below; and taking from them the consideration of the facts showing the equitable estoppel of the plaintiffs below.

9. The verdict of the jury and judgment of the court were against law and evidence.

10. The judgment of the court below, was for the plaintiff below, whereas it should have been for the defendants below."

Mr. *H. Binney, Jr.* for the plaintiffs in error.

1. The defendants below claimed a right to use this alley under their *deeds.* In 1815 Burd conveyed to Murray two lots of ground, containing together in front on Chesnut street 33 feet, together with the free and common use of this alley and the soil of the northern 2 feet 6 inches. At this time Murray was the owner of the houses and lots situate in Chesnut street west of the lots conveyed to him by Burd; and also of the houses and lots in George street, all of which are now owned by the plaintiffs in error. In 1817 Murray conveyed to Nicholas Biddle, together with the common use and privilege of the alley, and of a water-course over and along the same. It is contended on the part of the plaintiffs in error that they derived a right to the use of the alley from this conveyance. The language of the deed of 1809 from Burd to Sims is peculiar and remarkable, " Together with the free use and privilege of the said alley, in common with the said E. S. Burd, his heirs and assigns, and those to whom he may grant the privilege." The property conveyed was bounded on the north by other ground of Burd. There is nothing in this deed to show that the 2 feet 6 inches alley was intended to be limited in its use as appurtenant to the ground

(Lewis v. Carstairs.)

upon the alley.   Nor is there any thing in the agreement with Car-
stairs to make the alley a mere appurtenance to the ground on both
sides.   The words are not, as they usually are, to E. S. Burd, his
heirs and assigns, " owners and occupiers" of the adjoining ground,
but to him, " his heirs and assigns," generally.   The case is distin-
guishable from *Kirkham* v. *Sharpe*, (1 *Wharton's Rep.* 335.)   The
right of soil in the 2 feet 6 inches is certainly not in the plaintiffs
below, yet they have attempted to deprive the defendants of the right
of laying pipes under the surface.   Mr. Burd might have granted
the right of way in gross, if he pleased.   *Yelverton*, 159.   *Tomlin*,
794.   Carstairs made the agreement with full notice of the right
reserved by Mr. Burd to grant a participation of the alley to any
other person.

2.  The defendants claimed a right by virtue of the presumption
arising from lapse of time in analogy with the statute of limitations.
From 1817 to 1835, more than seventeen years, there was clear
evidence of undisturbed use : and there was evidence from which
the jury might have been allowed to presume an user as far back as
1815, nearly twenty years before the obstruction of the way by the
plaintiffs.   In a question of presumption arising from a lapse of time,
less than twenty-one years, evidence of acts of ownership and of
admission of right ought to be thrown into the scale; and the jury
ought to have been told that they were entitled to weight.   *Eldridge*
v. *Knott*, (*Cowper*, 414.)   *Bealy* v. *Shew*, (6 *East*, 208.)   *Doe* v.
*Wilson*, (11 *East*, 56.)   3 *Kent's Comm.* 450.   *Ricard* v. *Williams*,
(7 *Wheaton*, 109.)   *Morris Aqueduct Case*, (4 *W. C. C. Rep.* 601.)
*Tilghman* v. *Fisher*, (9 *Watts*, 441.)

3.  The plaintiffs below were equitably estopped from contesting
the rights of the defendants by the facts given in evidence of contri-
bution to the paving of the alley, &c.   *Neal* v. *Parkins*, (1 *Esp. N.
P. C.* 229.)   *Canal Co.* v. *Lloyd*, (18 *Ves.* 514.)   *King* v. *Northrop*,
(3 *Term Rep.* 300.)   *Ewing* v. *Desilver*, (8 *Serg. & Rawle*, 92.)
*Rerick* v. *Kern*, (14 *Serg. & Rawle*, 267.)   *Lefevre* v. *Lefevre*, (4
*Serg. & Rawle*, 241.)   1 *Story's Equity*, 378.

4.  The advertisement of the sheriff which was rejected on the
trial might have been admitted on the ground that it was an act of
official duty, whether evidence of notice or not.   *Tupper* v. *Taylor*,
(6 *Serg. & Rawle*, 173.)   1 *Starkie*, 173.

Mr. *Gerhard* and Mr. *F. W. Hubbell*, for the defendants in error.

The question below was merely of the right of way.   The subject
of the right to lay pipes and make use of the alley as a water-course
was not litigated.

1.  There was clearly no right under the deeds.   The right must
be appurtenant, and could not exist in gross.   The reservation to
Mr. Burd and those to whom he might grant the right, plainly refers
to the grant to Sims.   The language in the deed to Sims is restrained

by the deed to Carstairs. It may be conceded that the words give a power to license; but they are modified by the contract with Carstairs. The case of *Kirkham* v. *Sharp* is in point, and conclusive.

2. The word "presumption" has been inaccurately used both by text writers and judges. 2 *Starkie*, 679, 680. There is a difference between a license and an incorporeal hereditament. A right of way cannot depend upon a license. The case of *Rerick* v. *Kern* shows and explains the distinction. *Cook* v. *Stearns*, (11 *Mass. Rep.* 537.) *Taylor* v. *Waters*, (*Chitty's Gen. Prac.* 339.) *Collam* v. *Hocker*, (1 *Rawle*, 111.) A parol license is all that could be presumed here from the evidence; and that is necessarily revocable. There was no evidence to go to the jury on the subject of the presumption of a deed. *Dyer* v. *Depui*, (5 *Wharton*, 584.) *Summerville* v. *Holliday*, (1 *Watts*, 519.) *Hoy* v. *Sterrett*, (2 *Watts*, 330.) *M‘Kellip* v. *M‘Ilhenny*, (4 *Watts*, 324.) *Alexander* v. *Kerr*, (2 *Rawle*, 89.)

3. There can be no estoppel, either equitable or otherwise, from the circumstances of the case in evidence. The small contributions for repairing the pavement, indicate perhaps a temporary license, but nothing more. The iron pipes may be considered permanent, but they were not in question. The cases cited upon this point upon the other side went upon the ground of fraud; which cannot be imputed here.

4. The advertisement was clearly not admissible. *Beltzhoover* v. *Blackstock*, (3 *Watts*, 20.)

[The counsel were stopped on this point.]

Mr. *T. I. Wharton*, in reply.

The litigation below was not of the right of way only, but also of the right to use the alley above as a water-course or drain, and below the surface for pipes of conduit. This appears plainly from the agreement of the parties and the pleadings.

The case of *Kirkham* v. *Sharpe* is distinguishable from this by the circumstance, among others, of the stable-wall which is mentioned by the Chief Justice in his opinion as serving as a terminus or limit to the alley. Besides, there are no words here giving the "full and free" privilege of the alley, which were relied on in that case. The power was not exhausted by the grant of Burd to Murray. The judge ought to have left it to the jury upon the circumstances to presume a grant. *Folk* v. *Beidleman*, (6 *Watts*, 339.) The principle of the rule of equitable estoppel is applied to many cases in the books; such as standing by and seeing property sold without notice; allowing a man to build on the land of the party, or encouraging him to make repairs. This rule is enforced as between the original parties; but this is a stronger case for the application of it, because it appears that the present owners of the property bought under a full belief that that there was a right of way and of a water-course; and if the

alley is now closed against them they will have no outlet.  As to the *amount* of the contribution for expenses, that is never weighed. But here there was evidence of several payments.

The opinion of the court was delivered by

GIBSON, C. J.—Two principal subjects of direction are comprised in the assignment of errors,—Mr. Burd's reservation of a right in the alley for himself and his grantees, subsequently confirmed by the plaintiff,—and the defendants' adverse enjoyment of the alley, in connexion with their contribution to the expense of keeping it in order, on a common understanding that all were liable for their proportion of it.

By the conveyance in which the reservation is contained, Mr. Burd granted to Mr. Sims a lot butting on an alley, of which Mr. Burd had then the exclusive use, " together with the free use and privilege of the said alley as a passage in common with the said E. S. Burd and his heirs, and those to whom he may likewise grant the same;" and the first question is whether his power to grant was appurtenant or in gross.   The alley was contiguous, not only to the ground granted, but also to Mr. Burd's other ground; and did the matter stop here, the spirit of the decision in *Kirkham* v. *Sharp* would go far to restrain it to the former.   Such a reservation, however, was unnecessary; for it was settled in *Watson* v. *Bioren*, (1 *Serg. & Rawle*, 227,) that each grantee of a parcel of ground to which such an easement is appurtenant, is entitled to the benefit of it; and Mr. Burd's grantees would consequently have been entitled without it. The parties, however, seem to have been ignorant of that; and the object of the reserved power, unexplained by the subsequent agreement with the plaintiff, might seem to be no more than expressly to append the use of the alley to the other ground, and to put Mr. Burd's right to pass it as an appurtenance, beyond the reach of cavil: for it would be unreasonable to intend that the parties had in view a power to sell the privilege, and thus let in all the neighbouring proprietors.   Mr. Sims would probably have refused to purchase on terms that would have allowed Mr. Burd to surcharge.   Even had such a power been reserved, it is doubtful whether it could have been exercised by Mr. Burd's grantee.   It is certain that a privilege merely personal, cannot be granted over; and thus if a man lend his horse, the borrower cannot lend him to another: nor can a right of way for life, or common of estovers be granted.   2 *Rol.* 46.   But, however that may be, the easement passed from Burd to Murray as appurtenant to the residue of Burd's ground; and it could pass in no other way, for the conveyance contained no power in gross to grant it without stint.   On that state of the case, then, Murray could not append it to ground to which it was not appendant before; and how can his, or Mr Burd's, power be enlarged by the agreement with the plaintiff?

(Lewis *v.* Carstairs.)

If there were a doubt about the object of the reservation as it appears in the conveyance to Sims, this agreement would solve it. Mr. Burd had laid off only a narrow strip of the original lot for the alley; and that it was not enough for the purpose, was well understood by the parties at the time of the conveyance. A few months afterwards, the plaintiff agreed to throw in an additional foot on the other side, in consideration of being allowed to use the alley in common with the other two. That this agreement was contemplated by the original parties at the time of the conveyance, which is expressly mentioned in it, and that the end of the reservation was to provide for it so as to introduce the plaintiff as a third party by the description of a grantee, is undisputable; and the agreement, then, was an entire execution of the power.

. But though no right to the easement passed to the defendants by the conveyance of Burd, or of Murray his grantee, it remains to be seen whether there was not presumptive evidence of some other grant which might have been left to the jury; and whether the facts said to be proved by it, did not constitute an equitable estoppel in favour of an innocent purchaser, who may have parted with his money on the faith of them.

In the conveyance to Murray, the easement is described as an alley and "water-course over and along the same." It is as obvious to the spectator that these alleys are used as much for drainage as for passage, as it is obvious to the lawyer, that the word water-course was here used in a sense very different from its technical one. · A water-course, it is said in 3 *Bulstr.* 340, begins not by prescription, nor yet by assent, but *ex jure naturæ ;* and that being a natural course, it may not be diverted. And we know that our interest in it will be protected, even when it sinks below the surface. But a water-course over and along an alley is, by the words of its description, a superficial, as well as an artificial one; and the ownership of it consequently gives no right to break up the soil for the purpose of laying pipes, which, being · a subject of separate grant, might be acquired by adverse use, without, at the same time, acquiring a right of way. Now should it be found that the evidence had regard to expenditure for laying pipes, or for replacing the pavement, having laid them, it would go to prove a contribution to a general charge of a very different nature from that which would imply the existence of a joint right to the alley as a passage and a drain. On the other hand, if the expenditure was for the ordinary repairs of the alley, the payment of Mr. Biddle's proportion of it, could be looked upon in no other light than that of contribution to a common burden founded in a common obligation and correlative right in the thing which was the subject of it; and as such a right could exist only on the basis of a grant, the admission of obligation implied from the act of contribution, would be an admission of a grant, the evidence of which would be proper for the jury, not as

(Lewis v. Carstairs.)

conclusive or even necessarily *prima facie*, but as operating just so far as it should produce conviction ,of the fact. As a ground of equitable estoppel, however, it might be conclusive, if, to the appearance of adverse enjoyment occasioned by the plaintiff's supineness, were added positive acts of acquiescence, on his part, which may have encouraged an innocent purchaser to pay his money on the faith of them. This estoppel has its root in a plain and familiar principle of equity, which casts a loss from a voluntary, though innocent act, on the author of it. Now, though the evidence did not show very clearly the specific object to which Mr. Biddle's contribution had been applied, there was still something to be left to the jury. The testimony of Doctor Shoemaker and Looney undoubtedly had regard to expenditure for laying pipe ; but Mr. Biddle testified that he paid his contribution for repairs done to the alley ; and in that, he is corroborated by Mr. Sims's receipt for so much paid for Mr. Biddle's own, and Mr. Craig's, proportion of the expense incurred for paving it. Now this paving could not have been a part of the expense incidental to the laying of the pipe spoken of by the other witnesses ; for that was done in 1834, and Mr. Biddle's payment was in 1821. It is certaintly true, that there was a pipe there before, but how long, is not stated. Doctor Shoemaker speaks of its existence at the time of Miss Care's purchase ; but that was so late even as 1833. There was nothing therefore to connect Mr. Biddle's payment with the expense of any pipe whatever; and the attention of the jury was withdrawn from its importance by having been exclusively directed to the evidence of adverse possession for a period equal to that of the statute of limitations. Though the direction was accurate as regards the abstract principle laid down, it tended directly to mislead by inducing the jury to understand, that under the circumstances of the case, the duration of the naked possession was the only criterion.

Judgment reversed, and a *venire de novo* awarded.