## Millingar *versus* Sorg *et al.*

## Mitchell *et al. versus* Millingar.

1. The owner of warrant 4881 sold it, but by mistake pointed out to his vendee 4880, an adjoining warrant on the north, as being the land sold. The vendor afterwards, as agent, bought for another person 4884, believing its location to be 4881, which it adjoined on the south. The vendee of 4884 sold it out in lots, and by the same mistake pointed them out as being on 4881; improvements were made on some of these lots. *Held*, that the original vendor of 4881 and his vendee were estopped from claiming the true 4881, both as to the parts improved and those unimproved.

2. The principles of equitable estoppel and maxims, *Prior in tempore, potior in jure*, and *Melior est conditio possidentis*, applied to this case.

October 24th 1867, at Pittsburg. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Elk county*.

A writ of ejectment was issued on the 12th day of June 1865 by Henry Millingar against F. X. Sorg, Michael Konle, Michael

Schoebel, Caspar Werner, Clemens Haberberger, Josiah Caldwell, M. A. Mitchell and Francis Van Marsonville, for a tract of land in Benzinger township, " known as warrant No. 4881, warranted in the name of W. Willink and others, containing 1043 acres, more or less, bounded north by warrant 4880, east by warrant 4882, south by warrant 4884, west by warrant 4102." All the defendants appeared, and pleaded " Not guilty."

The annexed draft exhibits the several warrants and tracts referred to in the case :—

The plaintiff showed warrant No. 4881 to William Willink, survey and patent dated — September 1799 ; sale for taxes and treasurer's deed of February 16th 1847 to Hiram Payne as No. 4881, and recorded in the recorder's office of Elk county ; assignment October 1st 1849 from Payne to John Morris, endorsed on treasurer's deed, also recorded; deed from Morris and wife to Millingar, the plaintiff, dated January 16th 1865.

The following agreement in this suit was entered into by the parties January 14th 1867 :—

" It is hereby agreed that upon the trial of the above case the location of warrant 4881, Benzinger township, shall be considered where it is claimed to be by the plaintiffs, to wit, in the possession of the defendants, and that the defendants need not show title to warrant 4884, Benzinger township, under which they claim, any further back than can be shown by them from the records of this county, beginning with the title in Moses McKee and B. E. Mann, and from them title shall be shown in defendants."

The defendants exhibited deed of August 19th 1847 from McKee, by his attorney, Charles H. Thing, to Matthias Benzinger and John Eschbach for 352 acres, part of warrant 4884, " Beginning at a sugar-tree, the south-east corner of said warrant, thence west 434 perches to the south-west corner of said warrant, thence north 400 perches more or less to the north-west corner of said warrant, thence east 223 perches more or less to B. E. Mann's north-west corner, thence south 234 perches to said Mann's southwest corner, thence east 211 perches to said Mann's south-east corner in the east line of said warrant 4884, thence south 166 perches more or less to the place of beginning, containing 711 acres and 80 perches," &c. Also deed dated February 14th 1851 from Benzinger and Eschbach to Francis Van Marsonville for a tract being at south-west corner of 4884, and being the western part of that warrant ; 400 perches on the eastern and western lines, and 200 perches on the northern and southern lines ; also deed of February 6th 1865 from Van Marsonville, by his attorney, Ignatius Gamer, to Lewis Mitchell and M. A. Mitchell for the last-mentioned tract ; also deed, Benzinger and Eschbach, dated August 1st 1856, to Clemens Harberger for a " lot

[Millingar *v.* Sorg.]

[Millingar *v.* Sorg.]

beginning at a post on the south line of warrant 4884, about 66 perches west from the south-east corner of said lot, said post being also the south-west corner of Paulus Kleinmayer's tract, thence north 166 perches to a post, thence west 48¼ perches to a post, thence south 166 perches to a post, on the warrant line, thence east along the warrant line 48¼ perches to the place of beginning, containing 50 acres;" also a deed from the same to the same, dated November 24th 1859, for a lot " beginning at a post on the south line of warrant 4884, about 31 perches from the south-east corner of said warrant, thence north 166 perches to a post, thence west 35 perches to a post, thence south 166 perches to a post on warrant line, thence east 35 perches to the place of beginning, containing 36 acres;" also a deed, dated August 1st 1856, from same grantors to Caspar Werner for a lot " beginning at a post on south line of warrant 4884, about 114¼ perches west from the south-east corner of said warrant, said post being also the south-west corner of Clemens Haberberger's tract, thence north 166 perches to a post, thence west 48¼ perches to a post, thence south 166 perches to a post on the warrant line, thence east along the warrant line 48¼ perches to the place of beginning, containing 50 acres:" also a deed from the same grantors to Michael Schoebel, dated August 1st 1856, " for a lot beginning at a post on the south line of 4884, about 162½ perches, west from south-east corner of said warrant, said post being also the south-west corner of Caspar Werner's tract, thence north 166 perches to a post, thence west 48¼ perches to a post on the warrant line, thence east along warrant line 48¼ perches to the place of beginning, containing 50 acres;" also deed dated April 7th 1856 from B. E. Mann, by his attorney, L. F. Fuller, to Horace Little for " lot beginning at the north-east corner of tract 4884, thence south 234 rods to a post, thence west 217 rods to a post, thence north 234 rods to the north line of said warrant, thence east 217 rods to the place of beginning, containing 311 acres more or less, part of warrant 4884 ;" also a deed dated March 29th 1864 from Little to Michael and Wendell Konle for the above-described lot, and a deed from the Konles, dated August 23th 1864, to F. X. Sorg for the eastern part of the above lot, containing 202 acres. The foregoing deeds, with the powers of attorney under which some of them were made, were all duly recorded.

It was also shown that warrant No. 4880 was located immediately north of 4881, and No. 4884 immediately south of it. It was admitted at the trial that the lots described in the foregoing deeds were *in fact* located on No. 4881, instead of No. 4884, and that the locations correspond with the descriptions in the deeds, except as to the number of the warrant. The defendants called Payne, who testified that Benzinger, who owned 10,000 or 12,000 acres there, employed him, in 1844, as his attorney to

[Millingar *v.* Sorg.]

locate the warrants; McKee's tract adjoined Benzinger's. Under the advice of Payne, Benzinger consented that Payne should purchase McKee's lot for him, which he did by a contract to himself, in pursuance of which a deed was made to Benzinger, and the contract delivered up to McKee. Payne afterwards located 4881 and some other lots; and as he "fixed the McKee tract, 4884, West creek crossed it. In 1844 no one resided on this lot." The improvement on it commenced in 1845. Werner lived on this improvement; he had in 1852 a log-house and barn. William Nelson, also for defendants, testified that he had been employed by Payne to run out and sell Benzinger's lands; that he and Morris went to the tract called 4881; that Werner's improvement was on the tract called No. 4884; that they went through what they called 4884, and in going to what they called 4881 they passed Werner's improvement, which was about one acre, with a garden. Payne had previously shown him the lines of what they called 4881—the north and south lines on the west end of the warrant; that as he and Morris passed along, Morris made inquiry about the lands, and Nelson told him they belonged to Benzinger and Eschbach, that Werner had bought them, and that he, Nelson was acting as agent in looking for purchasers; that he had told Payne he had shown this lot to Morris, and that he was suited with it; he had been sent to show Morris this identical lot; that he had a draft of the lot, which had been given him by Payne; there was no improvement on the lot he had shown to Morris; that Werner had no house on his improvement at that time; he put a log-house on it in the fall of 1849; that the Philadelphia and Erie Railroad passed through what he called 4884; that the south line of the lot which he showed to Morris was north of West creek; that Gamer, an agent of Benzinger and Eschbach, showed him a draft of these lands. Charles Lahr, a witness for defendants, acted as agent for Morris for about five years, under a power of attorney; Morris was never on the land with him, but from information given him by Morris he found the land just where he had told him, north of the railroad and West creek. Millingar brought a letter to him requesting him to show Millingar the lot, he did not show it, but explained the situation to Millingar as Morris had done to him; Millingar thought that it was not the right lot; he told Millingar that the lot did not include any of the defendants' improvements, and that 4881 was north of the improvements; Morris went to see the land three times whilst he owned it. When Millingar purchased, Schoebel, Haberberger, Sorg and Konle were on the land. Werner had moved away before Millingar bought and Schoebel occupied the Werner improvements. The buildings on Schoebel's land would cost $6000, on Haberberger's, $4000, on Sorg's, $500. Up to the time of trial no one had occupied what the witness called the Morris tract. Werner's improvement,

[Millingar *v.* Sorg.]

according to this witness, commenced about 1847, and his brother commenced on the next lot in about two years afterwards. Other witnesses testified as to going past the Werner improvement in about 1856 or 1857 with Morris to what they called 4881, and that the improvement was shown to him. Morris lived in Pittsburg.

The plaintiff, amongst others, submitted the following points :—

1. Silence will postpone a title when it misleads, and thus becomes fraud, but it will not postpone where the party seeking the postponement on the ground of silence is himself aware of the title nor where it results from ignorance on the part of the owner, nor where with knowledge of his title he is aware that others are making improvements in ignorance of it.

5. That the location by Payne and Nelson of tract No. 4881 having been made by mistake upon tract No. 4880, the vendee of Payne and his vendee can hold and recover the land where it is admitted to be by the defendants, to wit, in their possession being the land described by plaintiff in his writ in this suit.

6. Estoppel will only act upon a title when the person to be affected by it has been misled or encouraged to expend money and make improvements by the act of the party setting up the opposite title.

The defendants, amongst others, submitted the following points :—

1. That as Payne purchased the McKee tract for Benzinger and Eschbach and located it for them at their request, or as their agent at the time he was owner of No. 4881, and they acquiesced in that location, subdivided and sold the parts thereof to settlers, he and all parties claiming No. 4881 under him are concluded thereby and estopped from disputing the location so made.

2. That Payne while owner of No. 4881 located it north of and adjoining the McKee tract and the tract so located was designated to Morris by Payne or his agent before his purchase, and Morris did purchase according to such designation and location, took the possession and exercised acts of ownership over the land and has not been disturbed in his possession, neither Morris nor his vendee, the plaintiff, can gainsay that location to the prejudice of the defendants.

3. The location of the McKee and Morris lands having been admitted on the trial of this case to be upon tract No. 4881, and Payne, when the owner thereof, having designated, represented and adopted that location and Benzinger and Eschbach having obtained the title to the McKee tract through Payne, and acting on the faith of his acts and representations as to the location, sold the lands in dispute to the defendants, Payne would be estopped

from asserting an independent title thereto and his vendees would be concluded thereby.

5. That if Morris knew that the defendants or those under whom they claim were making valuable improvements on the land as located by Payne after the purchase by Morris, and did not make known his claim for, or title to the land being improved by them, he and his vendee, the plaintiff in this case, are now estopped from setting up title thereto.

6. That the long acquiescence of Morris from 1849 to 1865 in the location of both tracts as made by Payne, silently permitting defendants and those under whom they claim to expend large sums of money in improving that portion now claimed by plaintiff, neither Morris nor the plaintiff can change that location in such a manner as to interfere with or prejudice the rights of the defendants.

7. That if Morris passed through the Werner improvement with Nelson, the agent of Payne, when he went to ascertain the location of the tract he was negotiating to purchase, saw the improvement, asked Nelson particularly who owned the land on which the improvement was, and was informed by Nelson, in answer to inquiry, that Benzinger and Eschbach were the owners of the tract and had sold a portion thereof to Werner, he (Morris) had notice before his purchase from Payne of the claim of Benzinger and Eschbach to said tract as also of the claim of Werner to his improvement.

The court (H. W. Williams, P. J.) affirmed the plaintiff's 1st and 6th points, and in answer to the 5th point said :—" If there was nothing more in the case than the mere mistake in locating 4881, the law would be correctly stated in this point and the plaintiff could recover. But upon the facts of this case we decline to charge as requested in this point."

He also affirmed the defendants' 7th point, and denied their 2d point.

He answered the other points and further charged as follows :—

" Upon the facts stated in defendants' 3d point Payne would be estopped from asserting an independent title to the land whether he held it at the time he procured the title for his principals or acquired it afterwards. But this question does not seem to us to be raised in this case. Payne located both these warrants 4884 and 4881, one tier of warrants too far north by mistake. Payne or his vendees are now seeking not to set up an independent title to 4884, but to correct the mistake in location and restore 4881 to its actual place upon the ground.

" To the 1st, 5th and 6th points by defendants, we reply as follows : The purchase by Payne while he was the owner of 4881, of 4884 for Benzinger & Eschbach, his location of it for them,

[Millingar *v.* Sorg.]

and at their request, and his subdivision of it into lots, would not alone prevent the correction of the mistake in location which had been honestly made. But if before the discovery of the mistake Benzinger & Eschbach sold these lots or subdivisions to actual settlers who went upon and improved the lands, expending money and labor thereon, with the knowledge and acquiescence of Payne, such actual settlers could acquire by virtue of their improvement upon the land a right to set up Payne's acts against any subsequent claim by him, to the lands so bought and improved by them. Being upon the land their possession was actual notice of their situation to the vendees of Payne ; and the estoppel is operative in their favor as against such vendees.

" Mere knowledge of the fact that settlers were upon these lands without more, Payne being in ignorance of his title, or the true location, would not estop him though valuable improvements had · been made by such settlers. That upon which we base our general instruction in answer to these points, is the peculiar situation of Payne and his relation to defendants' vendors. He was in their employment. While surveying for them he advises them to purchase 4884, for them he makes the negotiation which results in their obtaining a deed for it. Still in their service he locates the warrant and mistakenly puts it upon ground of which he is owner. He subdivides it into lots, sees a settlement made upon it by vendees of his principals. These settlements increased in number and value from 1846 to 1849, when Werner made his improvement up to the time when the present plaintiff purchased in 1865. The location made by Payne had been acquiesced in by himself, adopted and acted upon by his principals and the settlers under them, and improvements of great value made upon the lands. Upon all these facts and circumstances it would be inequitable and unjust that he whose mistake occasioned the mischief should reap the benefit of the improvements made upon the lands, and the settlers who are the victims of the mistake should lose the value of their labor and expenditures.

" The result of these instructions is that the plaintiff is entitled to recover so much of the land described in his writ as was, on the 16th day of January 1865, unoccupied by actual settlers. [As to those portions of the land which had been sold to actual settlers and improved by them prior to January 16th 1865, when the present plaintiff acquired his title, his situation is entirely different. If you believe from the evidence that Payne procured, located . and divided 4884 for Benzinger & Eschbach, as their attorney and surveyor in the manner he has stated in his evidence, that such location was adopted by Benzinger & Eschbach, and sales made to actual settlers who took possession and made improvements, that such settlements and improvements were known

[Millingar v. Sorg.]

to Payne & Morris under whom the plaintiffs claim title and were permitted to proceed without objection or notice, then although no fraud was meditated or intended by Payne, yet he and his vendees with notice are estopped, and as to so much of the land as you shall find so situated the plaintiff is not entitled to recover.]"

The jury found "for the plaintiff the land described in the writ, excepting the following described tract, to wit: beginning at a point 31.4 rods west of the south-east corner of warrant 4881, thence north 166 rods to the north-east corner of Clemens Haberberger's 36 acre lot, thence west 179.6 rods more or less to the north-west corner of Michael Schoebel's lot, thence south 166 rods to the south line of warrant No. 4881, thence east along the warrant line to the place of beginning."

Both the plaintiff and defendants took writs of error.

The plaintiff below (Millingar) assigned for error the answers of the court to his 5th point and to the defendants' 3d, 1st, 5th, 6th and 7th points and that part of the charge included in brackets.

The defendants below (Mitchell and others), assigned for error the answers of the court to the plaintiff's 1st and 6th points and to the defendants' 1st, 2d and 3d points.

*Souther*, for Millingar, cited Kerns v. Swope, 2 Watts 78; Miller v. Cresson, 5 W. & S. 284; Jaques v. Weeks, 7 Watts 267; Hood v. Fahnestock, 1 Barr 470; Epley v. Witherow, 7 Watts 167; Hill v. Epley, 7 Casey 331; Cresson v. Miller, 2 Watts 275; Boggs v. Varner, 6 W. & S. 474; Billington v. Welsh, 5 Binn. 129; Fisher v. Larick, 3 S. & R. 323; Plumer v. Robertson, 6 Id. 184; McCulloch v. Cowher, 5 W. & S. 427; Bracken v. Miller, 4 Id. 102.

*R. Brown*, for Mitchell and others, cited Eldred v. Haslett, 9 Casey 316; Willis v. Swartz, 4 Id. 413; 1 Story Eq., § 387; Wendell v. Van Renselear, 1 Johns. Chan. 354; Carr v. Wallace, 7 Watts 394; Epley v. Witherow, Id. 163; McCormick v. McMurtrie, 4 Id. 195; Gratz v. Beates, 9 Wright 496; McKelvey v. Truby, 4 W. & S. 323; Waters' Appeal, 11 Casey 523; Picard v. Sears, 6 A. & E. 475; Freeman v. Cooke, 2 Ex. R. 661; Commonwealth v. Moltz, 10 Barr 530; Dezell v. Odell, 3 Hill 219; Buchanan v. Moore, 13 S. & R. 304; Lewis v. Carstairs, 5 W. & S. 209; Martin v. Ives, 17 S. & R. 364; Shaw v. Galbraith, 7 Barr 111; Co. Litt. 352 a; Carver v. Jackson, 4 Peters 1; Trivivan v. Lawrance, 1 Salk. 276; Jaques v. Weeks, 7 Watts 267; Hemphill v. Carpenter, 6 Id. 25.

The opinion of the court was delivered, January 7th 1868, by

[Millingar *v.* Sorg.]

AGNEW, J.—These writs of error have both been taken in the same case, and will be considered together. We agree with the court below that the facts constituted an equitable estoppel, but disagree with them in limiting its extent to those parts of the tract which were settled and improved. Hiram Payne was the owner of tract 4881, which by mistake he supposed to lie upon No. 4880, one range north of the true location of 4881. When he sold 4881 to Morris, he directed him to 4880. Morris was shown 4880 as Payne's land, and bought it and continued to regard it as his own until he sold to Millingar, the plaintiff, who also was shown 4880 as Morris's land, and bought it. After discovering the error in location be brought this ejectment.

While Payne was the owner of 4881 he was the agent of Messrs. Benzinger & Eschbach, who owned a large tract of adjoining land. Moses McKee was the owner of 711 acres of 4884, whose true location is one tract south of 4881. B. C. Mauer was the owner of the remaining 311 acres of 4884. Payne, as the agent of Benzinger & Eschbach, supposing that 4884 was located on the ground occupied by his own tract 4881, advised them to buy McKee's part of 4884; and accordingly entered into a contract of purchase himself with McKee; upon which a deed was afterwards made to Benzinger & Eschbach, who paid the money, and the contract was surrendered to McKee's agent. The deed actually describes the 711 acres as lying in 4881, beginning at the sugar-tree, the south-east corner of 4881, but states the number as 4884. Benzinger & Eschbach, believing themselves to be the owners of this part of 4881, divided it into parcels and sold it, viz., 500 acres on the western side to Van Marsonville, who conveyed to the Mitchells, two of the defendants, 50 acres, and 36 acres to Haberberger, a defendant, 50 acres to Weiner, a defendant, and 50 acres to Schoebel, a defendant. These sales were all made, deeds delivered and purchase-money received without notice or knowledge of the mistake in the location, and Morris, the owner of 4881, still remaining in the belief that it was located where 4880 lies. Morris bought of Payne in August 1849, and when on his way to visit tract 4880, accompanied by Nelson, the agent of Payne, who was going with him to show it to him as 4881, he was shown, by Nelson, Weiner's improvement on 4881, which he pointed out as 4884. He was then also informed by Nelson, while passing through 4881 on their way to 4880, that Benzinger & Eschbach were the owners of that tract, and Weiner had bought of them. Nelson was then acting as Payne's agent, and was going with Morris to show him Payne's tract, which Morris intended to and did purchase immediately afterwards. According to Nelson's testimony, Weiner's improvement consisted of about an acre of land, and he put up a small log-house soon afterwards in the same fall. But according

[Millingar *v.* Sorg.]

to Payne's testimony, the improvements on the tract were commenced as early as 1845 or 1846, and had grown to considerable size in 1849. It is thought Payne is contradicted by the date of the deed to Benzinger & Eschbach, in August 1847: But as there was a precedent contract of purchase, this is not satisfactory. Some of the vendees of Benzinger & Eschbach were in possession at least as early as 1849, and before Morris bought. Since that time Schoebel's improvements have been increased so largely, that they were valued at $6000. He bought out Weiner, and his improvements are upon his own purchase and that of Weiner. Haberberger's improvements were valued at $4000 or $4500. The 500 acres owned by the Mitchells are unimproved. It is very clear that all the parties have acted in utter ignorance of the true location of their lands. Payne, and Morris, his vendee, believed that 4880 was 4881; and Benzinger and their vendees believed that 4881 was 4884; and all have continued to act accordingly. But Payne's act was a positive one, and misled all the others, he advised his principals to buy his own tract, he made the contract with McKee for it, he took the deed for it to his principals, and they paid the money for it. They actually purchased 4881, though denominating it as 4884. They did not intend to buy 4884 but 4881 as it lay on the ground. It was 4881 with all its natural advantages they intended to obtain, and their deed describes it in fact except in the number. Not only did they buy 4881 in fact, but they afterwards divided and sold it out in parcels, making conveyances and receiving payment. Their condition is such they cannot retrace their steps if they would. They are bound by their conveyances, and some of their vendees have expended large sums of money on the faith of their title. Under these circumstances Payne would be estopped as to the whole purchase of Benzinger & Eschbach. He misled them to their injury not only in expending their own money upon the purchase of 4881, but in placing themselves in a false position towards their own vendees. To permit him now to prove the truth of his title to 4881 would involve them not only in the loss of the land itself they were induced to purchase and pay for, but would subject them to strife and litigation with their vendees. For these reasons we think the court below erred in confining the estoppel to those parts of the tract in the hands of their vendees who had made valuable improvements upon them. It is impossible to restore Benzinger & Eschbach to the same position they were in when they were induced by Payne to buy the land. The cases bearing upon the question of equitable estoppel are so numerous I shall only refer to the following as fully sustaining our application of the principle to the facts of the present case: Diamond Coal Co. *v.* Fisher, 7 Harris 267; Beaupland *v.* McKeen, 4 Casey 124; McKelvey *v.* Truby, 4 W. & S. 323;

5 P. F. SMITH—15

[Millingar *v*. Sorg.]

Buchanan *v*. Moore, 13 S. & R. 304; Carr *v*. Wallace, 7 Watts 394; Lewis *v*. Carstairs, 6 Whart. 193; Id., 5 W. & S. 209; Commonwealth *v*. Moltz, 10 Barr 530–31; Hill *v*. Epley, 7 Casey 333–4; Woods *v*. Wilson, 1 Wright 379.

There is no doubt of the estoppel as against Payne, but is Morris estopped? He bought with a full knowledge that Benzinger & Eschbach were claiming title to this tract, derived from Payne's agent while on their way to visit the land he intended to purchase, and then saw himself the improvements of Weiner, their vendee. More than this, he did not intend, in fact, to purchase this tract, for he was shown and actually bought 4880, and continued to claim it as his own until he sold it to Millingar. He stands also in privity with Payne as his alienee, who sold him the land now known as 4880. It is true he was ignorant that his conveyance applied to the land which Payne induced Benzinger & Eschbach to buy, but this does not alter the fact that he did not buy that land, but bought and paid for the land covered by 4880; held himself out to the world as its owner, and so sold it to the plaintiff. His acts, as the alienee, united with Payne's act in keeping up the delusion originated by Payne. Under these circumstances his purchase and continued claim of the tract known now as 4880 were positive acts connected with Payne's act, characterizing his own continued silence, and this gave it also a positive effect in misleading those who were the professed owners· of 4881. It was not mere silence, but an operative quietude injuriously affecting those in possession of 4881; and its effect is displayed in the extent and value of the improvements which sprang up during his undisturbed and long continued repose. The case is uncommon—one of mutual error and of great hardship—but it is a mistake proceeding from one and the same person who misled all the rest, and which cannot now be remedied without great injustice to those who were first misled by Payne. It seems to be a case, therefore, to which we must apply the maxims, *prior in tempore potior est in jure—melior est conditio possidentis*. As to the 311 acres in possession of M. & W. Konle and F. X. Long, the case is different. The title to this part came from B. E. Mauer to Horace Little, who sold to the Konles. Payne had nothing to do with this sale, and the doctrine of estoppel, therefore, does not apply.

In the writ of error taken by Henry Millingar the judgment is affirmed; but in that taken by the Mitchells and other defendants, judgment is reversed and a *venire de novo* is awarded