## MIDLAND MINING CO. v. LEHIGH V. COAL CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF CENTRE COUNTY.

Argued April 22, 1890—Decided October 6, 1890.
[To be reported.]

1. A warrant with a survey thereon, duly returned and accepted, gives the warrantee a title to the land covered by it.  A junior warrant located on the same land confers no title, for the commonwealth had none to grant.

(a) Tracts now owned by the plaintiff were returned into the land office as surveyed north of and adjoining older surveys now owned by the defendant, and the north line of the older tracts was described by its monuments actually on the ground as the south line of the younger.

(b) The deeds from the patentee down to the plaintiff followed the description given by the return of survey.  Testimony was offered on the trial to show that, notwithstanding the official description and calls, the plaintiff's tracts were in fact located on top of the older warrants for which they called:

2. The evidence offered was irrelevant and immaterial for the following reasons: (1) It showed no title derived from the commonwealth, because her title passed under the first warrant and survey.  (2) Moreover, it showed no title derived from the patentee of the first surveys, because (c) Although the owner of both blocks, when he sold the surveys

### Statement of Facts.

now owned by the plaintiff, he followed the official description of the younger surveys, in his deed, and bounded his grantees on the south by the north line of the older surveys, a well known and plainly marked line on the ground; (*d*) he neither did nor said anything to mislead his vendees or induce them to think the land he sold them lay elsewhere than on the north of the older surveys; and (*e*) the north line of the older warrants was actually pointed out on the ground as the south line of the younger block to purchasers through whom the plaintiff claims.

3. The vendee, on discovering that he had purchased several tracts having no actual existence, might proceed against the vendor on his covenant or rescind the contract in toto, but could not go over the recognized lines of his purchase and appropriate a corresponding amount of his vendor's adjoining land.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 18 January Term 1890, Sup. Ct.; court below, No. 111 April Term 1885, C. P.

To the first Monday of April, 1885, the Midland Mining Company brought ejectment against the Lehigh Valley Coal Company, Charles F. Berwind, Allison White and Edward F. Berwind, for four contiguous tracts of land in Snow Shoe township, Centre county, described in the writ as having been surveyed December 13, 1792, in pursuance of warrants dated July 31, 1792, in the names of Andrew Bayard, William Bingham, George Harrison and Tench Francis, respectively. The defendants pleaded not guilty.

At the trial on August 16, 1887, before Mr. Justice WILLIAMS, then president judge of the 4th district, to whom, by agreement of the parties, the case was referred for trial without a jury under the act of April 22, 1874, P. L. 109, the plaintiff, in its case in chief, put in evidence the warrants and official surveys above referred to; patents in pursuance thereof, dated March 10, 1852, and granted to Jacob, Joseph and Benjamin Gratz; a deed from said patentees to John K. Smith, Edward K. Smith and Charles M. Taylor, dated April 1, 1852, and recorded May 12, 1852, for seventeen tracts of land, including the four above named; a regular chain of title from the grantees in said deed down to the plaintiff; and the sheriff's return to the writ of ejectment served upon the defendants. The following facts appeared from the plaintiff's title papers: The four surveys, in the names of Andrew Bayard, William Bing-

ham, George Harrison and Tench Francis, were parts of a large block of surveys known as the Aaron Levy block, and were in the southern tier thereof. In the official surveys, and in the patents, these tracts were described as bounded on the south by lands of Samuel Whittaker, James Whittaker, Paul Betz and Peter Betz respectively. The descriptions in the deed from the patentees to J. K. Smith and others, of the several tracts thereby conveyed, were copied from the descriptions given in the respective patents, and in all the subsequent conveyances in the plaintiff's chain of title the same descriptions were repeated.

The defendants, in their case in chief, put in evidence warrants dated July 3, 1792, in the names of Peter Betz, Paul Betz, James Whittaker and Samuel Whittaker; surveys made in pursuance thereof on July 13 and 14, 1792; tax sales under which the Betz and Whittaker tracts were conveyed to Jacob and Joseph Gratz in 1836; patents therefor granted to Jacob and Joseph Gratz in 1849 and 1850; will of Jacob Gratz, probated January 14, 1857, devising all his real estate to his son, Robert H. Gratz; deed dated April 1, 1857, from Joseph, Benjamin and Robert H. Gratz to William A. Thomas for one hundred and six tracts, including the Betz and Whittaker tracts; and subsequent conveyances by which the title of Thomas was vested in the Lehigh Valley Coal Company. The defendants then called witnesses whose testimony tended to prove that the lines of the Betz and Whittaker surveys, which were part of a block known as the Samuel Wallis block, and also as the Andrew Chapman block, were actually run and marked upon the ground as returned; that the northern line of that block was a well known and well marked line; that in 1854, when Taylor, one of the grantees in the deed made by the Gratzes in 1852, under which the plaintiff claimed, sold his undivided interest in the land therein described to Daniel Rhoads, he pointed out to Rhoads said marked line as the southern boundary of the Levy block, and in 1868 the other remaining grantees in that deed, and Rhoads, sold by that line; and that the defendants never were in possession of any land north of that line.

In rebuttal, the plaintiff offered to prove by certain surveyors that the block of surveys, consisting of fifty tracts, made

upon warrants dated July 31, 1792, including the four tracts, viz., Andrew Bayard, William Bingham, George Harrison and Tench Francis, in dispute in the case, is well located on the ground, and that, as it is located on the ground, it interferes with the block of surveys made upon warrants dated July 3, 1792, to the extent of one tier of tracts; that the Tench Francis is located upon and covers the same ground as the Peter Betz, claimed by defendants; that the George Harrison is located upon and covers the same ground as the Paul Betz, claimed by defendants; that the William Bingham is located upon and covers the same ground as the James Whittaker, claimed by defendants; and that the Andrew Bayard is located upon and covers the same ground as the Samuel Whittaker, claimed by defendants; the title papers already in evidence showing that both sets of tracts were owned by Jacob, Joseph and Benjamin Gratz, from 1836 to 1852, when they sold and conveyed the Andrew Bayard, William Bingham, George Harrison and Tench Francis, inter alia, to John K. Smith, Edward K. Smith and Charles M. Taylor, under whom plaintiff claims, and did not convey or attempt to convey the Peter Betz, Paul Betz, James Whittaker and Samuel Whittaker to William A. Thomas, under whom the defendants claim, until 1857.

The offer was objected to by the defendants for the reasons, in substance, (1) that it proposed to show a location of the warrants, under which the plaintiff claimed, upon land which did not belong to the commonwealth at the date of the location; (2) because the descriptions in the deed of April 1, 1852, and the subsequent deeds under which the plaintiff claimed, were notice that the land conveyed by those deeds extended no further south than the northern line of the Betz and Whittaker surveys, and estopped the plaintiff from claiming thereunder any land south of said line; and (3) that the offer was incompetent as an attempt to contradict the boundaries specified in the plaintiff's title deeds.

By the court: I should have preferred personally to dispose of this question as I understand the practice under the act of assembly under which this cause is being tried, but I recognize the right of the defendants to raise the question in this manner and my obligation to meet it. I have given to the question some little thought and listened attentively, with a desire to in-

Decision of Court below.

form myself as fully as possible, to the arguments made upon this question. I have, however, a distinct and definite opinion about the rule in this case. We will put our ruling upon the record so that if we are mistaken there will be no trouble about correcting it. We sustain the objection to the admissibility of this evidence, and we do it upon the view of the law that we now state : We are inclined to hold, first, that where the conveyance describes land by reference to adjoiners and well marked lines on the ground, and also by reference to the name of the warrantee, and these are at variance, the lines on the ground must be followed and the other words of the description must give way. We think that is the fundamental rule governing this whole class of questions. We are inclined to hold that, conceding a mistake to have been made by the deputy surveyor, yet the real question here is, what land passed to the plaintiff in his deed from Jacob Gratz and others; and, that deed being clear and distinct in its descriptions, so far as the marks on the ground were concerned, the plaintiff is limited to the marks actually found in accordance with the descriptions of the deed; and the fact that the land embraced within those lines is called by a wrong warrantee name, has no effect to extend the right of the claim of the plaintiff; exception.[1]

The decision of the court was filed on August 26, 1887. It recited the respective chains of titles put in evidence by the parties, and the facts appearing upon the face thereof and found from the evidence, as above stated, and embraced the following additional

### FINDINGS OF FACT.

4. That the tracts of land in the warrant names of Peter Betz, Paul Betz, James Whittaker, and Samuel Whittaker, were well located upon the ground by the surveyors in 1792, as returned into the land office; and their location is established by the evidence in this cause, and is conceded by the plaintiff, the north line thereof, being well marked upon the ground, at the distance of about two miles north from the two sugars, an original corner in the survey of the Andrew Chapman block.

6. . . . . [That by these descriptions (of the four tracts claimed by the plaintiff, as given in the deed from Joseph

Decision of Court below.

Gratz et al. to J. K. Smith et al., dated April 1, 1852), the southern lines of the said four tracts are fixed at and upon the northern lines of the defendants' older tracts, in the names of Peter Betz, Paul Betz, James Whittaker, and Samuel Whittaker, and the grantees in said deed and their successors in title acquired no right thereby, to land south of the said northern line of the defendants' surveys.] [3]

10. That the northern boundary line of the defendants' tracts, in the names of Peter Betz, Paul Betz, James Whittaker, and Samuel Whittaker, are the southern lines respectively of the plaintiff's tracts, in the names of Tench Francis, George Harrison, William Bingham, and Andrew Bayard; and that the said lines are well marked upon the ground.

11. [That the plaintiff has shown no title to land lying on the south of the northern lines of the tracts in the names of Peter Betz, Paul Betz, James Whittaker, and Samuel Whittaker.] [6]

12. [That the defendants are not in the possession of any part of the lands described in the plaintiff's writ, and were not in possession at the time of the service of the summons in ejectment in this cause.] [7]

13. That the said north line of the defendants' four tracts was recognized as the south line of the plaintiff's tracts, when they were conveyed to Daniel Rhoads by E. K. Smith, John K. Smith and Charles M. Taylor, and by Daniel Rhoads, when he made the conveyance of the said tracts through which the plaintiff derives title.

CONCLUSIONS OF LAW.

The court finds the legal rules applicable to and controlling this case as follows:

1. Natural monuments or surveyors' marks, made upon the ground, fix the location of a survey which calls for them, and, in such case, courses and distances may be disregarded.

2. [Calls for an older survey, actually located by marked lines upon the ground must be followed; and, in such case, calls for younger surveys of the same date with that in controversy may be disregarded.] [9]

3. [The call by the official surveys of the plaintiff's tracts for the north lines of the defendants' older surveys, which were well marked upon the ground as their southern boundary,

excludes them from the land south of those lines, and from the land covered by defendants' tracts.] [10]

4. [That the defendants are not estopped from insisting upon such location of the plaintiff's surveys, by the deed of Jacob Gratz and others to E. K. Smith, J. K. Smith and C. M. Taylor; for the reason that said deed described the tracts conveyed as they are described in the official surveys, as lying north of the Peter Betz and other tracts of defendants and could not, therefore, mislead the grantees as to the true location of the lands purchased by them.] [11]

5. [That the plaintiff is not entitled to recover in this case.] [12]

And now 18th August 1887, the court, upon the issue joined in this case, finds in favor of the defendants.

Exceptions to the findings of fact and conclusions of law, set forth in the decision, were filed by the plaintiff. On October 17, 1887, Mr. Justice WILLIAMS having taken his seat upon the Supreme Bench, the parties agreed that the exceptions should be disposed of by FURST, P. J., of the 49th district, and the same day a decree was made overruling the exceptions and entering judgment for the defendants. Subsequently the plaintiff took this appeal, assigning for error:

1. The refusal of plaintiff's offer.[1]

3, 6, 7. The findings of fact embraced in [ ] [3 6 7]

9–12. The conclusions of law embraced in [ ] [9 to 12]

*Mr. S. S. Blair* and *Mr. John H. Orvis* (with them *Mr. H. T. Harvey, Mr. C. M. Bower* and *Mr. Ellis L. Orvis*), for the appellant:

1. The first assignment covers the main and controlling question in the case, viz., what is the proper construction of the deed from Joseph Gratz and others to John K. Smith and others? The effect of the ruling of the court, complained of, is that the deed did not convey all of the seventeen tracts described in it, but only as many of them as lay north of the northern line of the Wallis block of surveys. The words of the deed are unambiguous. It will be observed that it does not convey a body of land as a single tract, but seventeen different tracts, each one separately described, the descriptions

being copied from the patent in each case, and the descriptions in the patents being taken from the official surveys. The legal effect of the deed is the same as if seventeen separate convey-ances had been made. According to the ruling of the court below, if this had been done the conveyances for the four tracts in controversy here would have been mere nullities, conveying nothing at all, because the Betz and Whittaker tracts are called for as the southern adjoiners, and between those tracts and the northern adjoiners called for there was no land to be conveyed. The vice of this argument is in ignoring everything in the descriptions but the adjoiners on the south.

2. The tracts are accurately described according to the official surveys and by reference to the warrants. The mistake as to the southern boundary was not that of the grantors or the scrivener, but of the deputy surveyor who located the tracts on the ground. That such a mistake cannot vitiate a deed, is clear: Stewart v. Shœnfelt, 13 S. & R. 368; Commonwealth v. McDonald, 16 S. & R. 398; Seckel v. Engle, 2 R. 67. A conveyance of land described as a tract surveyed to a particular person, passes all within the lines of the survey, although the grantor may have had a better title to the land than that described: Armstrong v. Boyd, 3 P. & W. 458. Calls for adjoiners must give way to the lines actually run and marked upon the ground: Lilly v. Kitzmiller, 1 Y. 28; Gratz v. Hoover, 16 Pa. 232; Malone v. Sallada, 48 Pa. 419; McGowan v. Ahl, 53 Pa. 84; Wood v. Appal, 63 Pa. 210; Watson v. Jones, 85 Pa. 117; Pruner v. Brisbin, 98 Pa. 202; Arnold v. Pfoutz, 117 Pa. 103. If the latter clause of the second finding of law was meant to apply to calls for surveys of the same date which have their lines marked on the ground, we dissent in toto from the proposition. If a tract has no marked lines of its own, all its calls must be regarded; if all cannot be answered, the location must be taken which will answer the greatest number, and if any of the adjoining tracts belong to the same block, lines found for them will fix its location regardless of its calls for adjoiners: Malone v. Sallada, 48 Pa. 425; McDermott v. Hoffman, 70 Pa. 47; Eister v. Paul, 54 Pa. 196; Lumbering Co. v. Barber, 87 Pa. 313; Pruner v. Brisbin, 98 Pa. 202; Cross v. Tyrone Co., 121 Pa. 387.

3. We should have been permitted to prove, by the lines

Arguments.

actually run and marked for the Levy block, that the four tracts claimed by the plaintiff occupied the identical land which the four tracts claimed by the defendants covered. Such interferences have often occurred. Gratz v. Beates, 45 Pa. 495, is an example. In such a case, a tax sale under the name of the younger warrant may convey a good title : Hunter v. Albright, 5 W. & S. 423; McCoy v. Michew, 7 W. & S. 386. The owner of the older warrant may estop himself by his acts and declarations from setting up his title against a purchaser of the younger title. Or, the same person may have owned both titles and conveyed the land under the name of the younger survey, thus estopping himself by deed: Armstrong v. Boyd, 3 P. & W. 458. In this case, we claim that Joseph, Jacob and Benjamin Gratz, having conveyed these tracts under the warrant names of Francis, Harrison, Bingham and Bayard, at a time when they were the owners of both the conflicting titles, were estopped from setting up title to the same land under the surveys in the names of Betz and Whittaker, and that the plaintiff, who claims under the first conveyance made by the Gratzes of these lands, has a better title than the defendants.

*Mr. S. P. Wolverton* (with him *Mr. Samuel Linn*), for the appellees.

Counsel cited: (1) As to the effect to be given to calls for adjoiners : Brolaskey v. McClain, 61 Pa. 163; Mackentile ·v. Savoy, 17 S. & R. 104; Murphy v. Campbell, 4 Pa. 485; Cox v. Couch, 8 Pa. 147; Petts v. Gaw, 15 Pa. 218; Mathers v. Hegarty, 37 Pa. 64; Speakman v. Forepaugh, 44 Pa. 372; Bellas v. Cleaver, 40 Pa. 260; Manhattan Coal Co. v. Green, 73 Pa. 310 ; Watson v. Jones, 85 Pa. 125; Malone v. Sallada, 48 Pa. 419 ; Dreer v. Carskadden, 48 Pa. 38; Payne v. Howard, 107 Pa. 583; Koch v. Dunkel, 90 Pa. 264; Eister v. Paul, 54 Pa. 198; Parshall v. Jones, 55 Pa. 153; Caul v. Spring, 2 W. 390 ; Covert v. Irwin, 3 S. & R. 288 ; Mathers v. Hegarty, 37 Pa. 67; Bentley v. Rickabaugh, 62 Pa. 284; Large v. Penn, 6 S. & R. 487; Wilder v. Davenport, 58 Vt. 642; Bundy v. Morgan, 5 Vt. 46 ; Ide v. Pearce, 9 Gray 350; Bosworth v. Sturtevant, 2 Cush. 392; Davis v. Rainsford, 17 Mass. 207 ; Thatcher v. Howland, 2 Metc. 41; Binney v. Morrill, 52 Me.

Opinion of the Court.

256. (2) As to the estoppel of the grantee in a recorded deed from claiming, against a subsequent purchaser, land outside the lines therein given : Kennedy v. Lubold, 88 Pa. 257 ; Lodge v. Barnett, 46 Pa. 484; Darrah v. Bryant, 56 Pa. 75 ; Gratz v. Beates, 45 Pa. 504 ; Mackentile v. Savoy, 17 S. & R. 107 ; Ogden v. Porterfield, 34 Pa. 195 ; Tyler's Law of Boundaries, 287, 335, 336 ; Penrose v. Griffith, 4 Binn. 239 ; Carver v. Astor, 4 Pet. 1 ; Chautauqua Co. Bank v. Risley, 4 Den. 486 ; Stow v. Wyse, 7 Conn. 214 (18 Am. Dec. 99) ; Millingar v. Sorg, 55 Pa. 215 ; Dawson v. Mills, 32 Pa. 302 ; Bender v. Pitzer, 27 Pa. 333 ; Willis v. Swartz, 28 Pa. 413 ; Hill v. Epley, 31 Pa. 335 ; Salter v. Reed, 16 Pa. 263.

OPINION, MR. JUSTICE WILLIAMS :

The important question in this case is raised by the first assignment of error. It will be approached at best advantage along the route by which it was reached on the trial in the court below.

The plaintiff showed title out of the commonwealth to the several tracts described in the writ, as surveyed on the 13th December, 1792, in the warrantee names of Andrew Bayard, William Bingham, George Harrison, and Tench Francis, containing four hundred and thirty-three acres and one hundred and fifty-three perches each. This title was traced from the warrantees to the plaintiff. The writ and return were then put in evidence, and the plaintiff rested. The documentary evidence by which the title was traced showed that the four surveys described were part of a large block containing about fifty surveys, known as the Levy block. It also showed that the title of the warrantees was vested in Jacob Gratz, Joseph Gratz and Benjamin Gratz, to whom the patents were issued by the commonwealth on the 10th of March, 1852.

The defendants met this prima facie case against them by showing a survey made on the 13th of July, 1792, under four warrants previously issued in the names of Peter Betz, Paul Betz, James Whittaker, and Samuel Whittaker, for four hundred and thirty-three acres and one hundred and fifty-three perches each, and by tracing the title from the commonwealth to themselves. They then showed, by the testimony of a number of surveyors, the existence on the ground of the original

lines locating these tracts in accordance with the return of the deputy surveyor, and that their operations were wholly within the lines of these tracts owned by them when they were served with the writ. The documentary evidence introduced by them showed that these warrants were part of a block known as the Wallis Block; that the title of the warrantees in the tracts comprising the Wallis block was acquired by Jacob, Joseph, and Benjamin Gratz, to whom patents therefor were issued in 1849 and 1850; and that the north line of their tracts was the north line of the Wallis block, which was called for by the official return of the plaintiff's tracts as their south line, and the south line of the Levy block. This was a complete answer to the plaintiff's case, and upon it the defendants were entitled to a verdict when their case closed.

The plaintiff, however, undertook to show that, notwithstanding the seniority of the surveys of the defendants and their actual location by original lines on the ground, which included the operations of the defendants, it was, nevertheless, entitled to recover. For this purpose, it offered to prove by W. P. Mitchell and others, surveyors, that the plaintiff's warrants had been originally located so as to cover the four older surveys of the defendants. This offer was rejected, and the correctness of that ruling is the question now to be considered.

It will be seen that the offer is a concession of the facts alleged by the defendants, viz., that they have the older grant from the commonwealth, the older survey of the land in controversy, and that they have correctly located their tracts on the ground. Conceding all this, the offer proposes to show that the junior surveys were located on the top of the older. What would be the legal effect of such a showing? Without more, it would be to render the younger surveys of no effect whatever. The land, having been already appropriated under the first warrants and surveys, was no longer open to purchasers, and the younger surveys, whether made by mistake or design, could confer no right whatever on the holder. This was settled as early as Robeson v. Gibbons, 2 R. 45. The return of survey to the land-office, and its acceptance, gave title to the warrantee: Bunting v. Young, 5 W. & S. 196; Wolf v. Goddard, 9 W. 545; Wilhelm v. Shoop, 6 Pa. 21. The title being out of the commonwealth when the second appropriation

Opinion of the Court.

was attempted, the warrantee could acquire nothing by his survey, because the commonwealth had nothing to grant. Upon the general question raised by the offer, it is very clear, therefore, that, as the younger surveys could not affect the validity of the older ones under which the defendants showed title, the fact that they were made as alleged was no reply to the defendants' case, but was an immaterial and irrelevant fact, which if admitted could have no effect except to mislead or confuse.

But the learned counsel for the plaintiff calls attention to the fact disclosed by the conveyances, that Jacob, Joseph, and Benjamin Gratz were the owners of both blocks of surveys when in 1852 they sold out of the Levy block seventeen tracts, including the four now held by the plaintiff, to J. K. Smith, E. K. Smith, and Charles M. Taylor; and he argues with great earnestness that, by this conveyance, the title to the older surveys in the Wallis block, as well as that to the younger ones actually named and described, passed to the grantees. If such is the legal effect of the conveyance, the evidence is not irrelevant, and its rejection was erroneous.

At this point it is important to recall the state of the evidence at the time when the offer was made, as it is shown by the findings of the court below. These findings have the conclusiveness of a verdict, and they establish the following facts:

1. That the southern tier of tracts in the Levy block was returned as lying north of and adjoining the northern tier of tracts in the Wallis block and called for them as adjoiners.

2. That the four particular tracts claimed by the plaintiff were returned as lying on the north of, and calling for the four tracts claimed by defendants.

3. That the same description of the plaintiff's tracts, and the same call for the north line of the Betz and Whittaker surveys, as their southern boundary, runs through the entire chain of the plaintiff's title, from the return of survey and patent to the last deed under which it holds.

4. That the north line of the Betz and Whittaker surveys was a well-known and well-marked line on the ground.

5. That this line was known to, and recognized by the grantees of Jacob, Joseph and Benjamin Gratz, as the south line of their purchase, and shown to Daniel Rhoads as such when

they sold to him in 1854, and by him when he sold to those under whom the plaintiff acquired title.

Now, to sustain the position of the plaintiff, and make the deeds for the Andrew Bayard and other tracts in the Levy block operative to pass title to the Betz and the Whittaker surveys in the Wallis block, one of three things must be shown: either (a) the description in the deed from John, Jacob and Benjamin Gratz to J. K. Smith et al. must be capable of such a construction as shall embrace the Betz and the Whittaker surveys; or, (b) the lines on the ground, and the calls, must embrace them; or, (c) they must have been pointed out to the purchasers as and for the tracts named in the deed, or at least some line which includes them must have been shown as a line of the tracts sold. But the negative of each of these appears clearly. The description in the deed from Gratz to Smith et al. did not embrace the Betz and Whittaker surveys, but excluded them, and called for them as adjoiners on the south. Both the calls for adjoiners and the lines on the ground excluded them. The vendees of Gratz knew the location of their south line, and pointed it out to Rhoads, their vendee, on the ground, as the north line of the Wallis block two miles north from the sugars. The title to the Betz and Whittaker surveys did not pass, therefore, from Gratz to Smith and others by the terms of the conveyance or by estoppel, and, on the evidence as it stood when the offer was made, the fact relied on by the plaintiff, that Gratz owned both blocks at the date of the deed to J. K. Smith et al., did not render the proposed evidence competent.

Armstrong v. Boyd, 3 P. & W. 458, is much relied on by the appellant. That was the case of an interference by a younger with an older survey. In 1775 Hains owned both of them. He sold the Jones, which was the younger, and conveyed it by deed describing it as a tract of land "lately laid unto Joseph Jones by certain metes and bounds in the said survey mentioned, containing one hundred and sixty-two acres, be the same more or less." This was a conveyance by the lines of the survey, and those lines were actually on the ground, and included part of the Stein, which was the older survey. The point ruled was that the deed covered the land described, and carried the right of the vendor in the same to his vendee. This is in

accordance with the elementary rule that where one conveys land to another in fee-simple to which he has a defective title or no title at all, and afterwards acquires a good title, that title shall inure to the benefit of his vendee. The case now before us is distinguishable from Armstrong v. Boyd, supra, in this all-important particular: In that case, the land in controversy was clearly covered by the description in the deed, and the vendor's title must pass to his vendee unless restrained by some rule of law; in this case, it is settled by the findings of fact in the court below, and it is clear on the evidence, that the description in the deed does not by its terms include the land in controversy, but locates the land conveyed by it on the north of the Betz and Whittaker surveys and of the well-marked north line of the Wallis block.

The land in controversy, not being covered by the description in the deed, could not pass under it unless some rule of law required it. If the purchaser had been misled by having these lands pointed out to him as the lands he was purchasing, or if the south line of the Betz and Whittaker surveys had been shown him as their north line, then, under the rule laid down in Millingar v. Sorg, 55 Pa. 215, the vendor would not be allowed to deny that the fact was as he had represented it to be, and his title would pass to his vendee notwithstanding the description. But here again, the findings of fact in the court below, resting on uncontradicted testimony, settle the question the other way; for it appears that the vendees of Gratz knew the location of the north line of the Betz and Whittaker surveys, and pointed it out to their vendee as their south line. They understood that the land they owned and were about to sell to Rhoads and others lay wholly north of the north line of the Wallis block; so that neither were they misled as to the location of their lines, nor did they mislead their vendees. Both the description in the deed and the understanding of the parties related to a recognized and well-marked line on the ground, which does not include the land in controversy. It is apparent, therefore, that Armstrong v. Boyd does not rule the present case.

But it is said that the ground between the north and south lines of the Levy block is too narrow, if the south line be located along the north line of the Wallis, to accommodate all the

members of the block, and that one whole tier will thus be squeezed out. Let us assume that this is true. Let us go further, and assume, what is by no means clear, that the southern tier is the one that will lose its place. What, then, is the remedy for the purchaser? He has bought and paid for several tracts, one or more of which has no actual existence on the ground. Shall he proceed against his vendor on his covenants, or shall he rescind the contract in toto? He may make his election, and his remedy is enforceable in either case by action. But the remedy on which the appellant insists is the right to go over the marked and recognized lines of his purchase, and appropriate the adjoining lands of his vendor to an amount equal to that which he finds to be the shortage within his lines, without regard to their relative value per acre. Such a mode of redress cannot be sanctioned by a court of law. It is not supported by Armstrong v. Boyd, nor by Seckel v. Engle, 2 R. 68, nor by the doctrine of estoppel which was applied in Millingar v. Sorg, 55 Pa. 215. As we have already seen, Armstrong v. Boyd was the case of a sale of land which was clearly described in the deed by lines which included the interference. In Millingar v. Sorg the purchaser was taken on the ground and put into possession of a lot which was on a different warrant from that named in the deed. In both cases, the court had regard to the land inclosed by the lines, whether these were ascertained from the deed or were actually shown on the ground; and, when the description differed from the lines pointed out, the latter were adhered to, and the description in the deed so far disregarded.

After careful examination of the cases cited, and of the argument of the experienced and able counsel of the appellant, we think the offer to prove that the plaintiff's younger surveys were laid upon the defendants' older ones was properly rejected. The land, which it was thus proposed to appropriate to the Bayard and the other tracts of the plaintiff, was not covered by the description in the deeds under which the plaintiff acquired title, but was excluded therefrom by the lines of the survey referred to, and made part of the description. It was not pointed out to the purchaser as the land sold, but, on the other hand, the marked line on the north of the Betz and Whittaker surveys was recognized as the south line of their

lands by the vendees of Gratz, and they pointed it out as such to their vendees when they sold.

The judgment is affirmed.